## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITEDHEALTH GROUP, INC.,
Individually, and on behalf of all others
similarly situated,

        Plaintiff,

        v.

GLAXOSMITHKLINE, LLC,
GLAXOSMITHKLINE HOLDINGS
(AMERICAS) INC.,

        Defendants.

C.A. No. _____

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, 1446, and 1453, Defendants

GlaxoSmithKline LLC and GlaxoSmithKline Holdings (Americas) Inc. (collectively, "GSK"),

by their undersigned attorneys, hereby remove this putative class action from the Philadelphia

County Court of Common Pleas to the United States District Court for the Eastern District of

Pennsylvania. Because this lawsuit is brought on behalf of a putative class, this Court has

jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). As grounds for removal, GSK

states as follows:

        1.        On December 23, 2010, Plaintiff UnitedHealth Group, Inc. ("UHG") filed

(1) a Praecipe to Issue Writ of Summons, and (2) Pre-Complaint Interrogatories

("Interrogatories") in the Philadelphia County Court of Common Pleas, in the civil action styled

*UnitedHealth Group, Inc. v. GlaxoSmithKline LLC*, December Term 2010, Case No. 2871. A

true and correct copy of the Praecipe and Interrogatories is attached hereto as Exhibit A.

2.    On January 28, 2011, GSK timely removed this action to the United States District Court for the Eastern District of Pennsylvania.

3.    On April 18, 2011, the United States District Court for the Eastern District of Pennsylvania remanded the action to the Philadelphia Court of Common Pleas on the grounds that removal was premature because UHG had only filed a writ of summons and pre-complaint interrogatories.

4.    Upon remand, UHG filed a motion to compel responses to its pre-complaint discovery, and at oral argument on the motion, held May 16, 2011, UHG reaffirmed on the record that it is bringing its claims as a class action and specified its four causes of action against GSK. A true and correct copy of the portion of the argument transcript ("Tr.") containing these record statements is attached as Exhibit B. (Tr. 4)

5.    UHG's claims are for recovery of health care expenses paid for treatment of conditions allegedly caused by GSK's prescription medications Avandia and Paxil as follows: (1) subrogation; (2) reimbursement (which UHG conceded to be a claim against an insured, and not GSK); (3) under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502 (a)(3) (codified at 29 U.S.C. § 1132 (a)(3)); and (4) under the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b)(5). (Tr. 4-11)

6.    This Court has subject matter jurisdiction over UHG's action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), and exclusive federal jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502 (a)(3) (codified at 29 U.S.C. § 1132 (a)(3)); 28 U.S.C. § 1331 (federal question).

I.     **THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

7.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). UHG first specified its causes of action on May 16, 2011.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a), because the Philadelphia County Court of Common Pleas is located within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania.  28 U.S.C. § 118(a).

9.     In accordance with 28 U.S.C. § 1446(d), GSK will file promptly a copy of this Notice of Removal with the Philadelphia County Court of Common Pleas.  GSK has served all parties with a copy of this Notice of Removal.

II.    **THIS COURT HAS FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

10.    This Court has subject matter jurisdiction over this action pursuant to CAFA.  *See* 28 U.S.C. §§ 1332, 1453, 1711-15.

11.    This action is not one described in 28 U.S.C. §§ 1332 or 1453 as non-removable, and no statutory exception to CAFA jurisdiction applies in this case.  *See* 28 U.S.C. §§ 1332(d)(4)(A), (d)(4)(B).

12.    Under CAFA, federal courts have original jurisdiction over class actions where the putative class contains at least 100 members; any member of the putative class is a citizen of a State different from that of any Defendant; and the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), and (d)(6).

13.    This action satisfies all requirements for federal jurisdiction under CAFA.

## A. Numerosity Exists

14.     The putative class contains at least 100 class members.  UHG has commenced this class action against GSK on behalf of itself and all "similarly situated health plans." (Tr. 4, 45, 62). According to the American Association of Health Plans, of which UHG is a member, there are at least 1,300 health plans in the United States.  CAFA's requirement of class numerosity is therefore satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

## B. Minimal Diversity of Citizenship Exists

15.     Under CAFA, but not under provisions of the United States Code addressing diversity of citizenship in actions not considered class actions, *i.e.*, 28 U.S.C. § 1332(a), the citizenship of an LLC is that of "the State where it has its principal place of business and the State under whose laws it is organized." *See Steel City Group v. Global Online Direct, Inc.*, 2006 U.S. Dist. LEXIS 83622, at *5 (W.D. Pa. Nov. 16, 2006) (quoting 28 U.S.C. § 1332(d)(10)).  GSK is an LLC formed under the laws of Delaware.[1]  For purposes of CAFA, GSK has its principal place of business in Philadelphia, Pennsylvania.

16.     There is diversity of citizenship because UHG is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.  (*See* UnitedHealth Group, Inc., Annual Report (Form 10-K), at 1 (Feb. 10, 2010)).

## C. The Amount in Controversy Is Satisfied

17.     The amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs.

---

[1] The sole member of GSK LLC is GlaxoSmithKline Holdings (Americas) Inc., a Delaware corporation with its principal place of business in Wilmington, Delaware.

18.     Private insurers such as UHG provide insurance coverage for approximately two-thirds of the population of this country. (*See* Press Release, United States Census Bureau, *Income, Poverty and Health Insurance Coverage in the United States: 2009*, Sept. 16, 2010 (noting that 194.5 million Americans have private insurance)).

19.     Upon information and belief, a substantial percentage of the claimants who filed suit in the Avandia litigation and the Paxil Pregnancy litigation are privately insured.

20.     UHG's claims for treatment costs in connection with Avandia exceed $5 million.  UHG asserted in connection with its pursuit of discovery that its and the other health plans' claims are for heart attacks, strokes, and other complications arising from the use of Avandia.  The medical costs of hospitalization associated with these conditions are substantial and can easily exceed $10,000 per person.  In 2004, the Department of Health and Human Services concluded that the mean cost of hospitalization alone was $16,200 for heart attack patients, $11,100 for stroke patients, and $9,400 for CHF patients. (*See* Dep't of Health and Human Servs., Agency for Healthcare Research and Quality, *Hospital Stays for Circulatory Diseases, 2004*).

21.     Even if treatment costs totaled $10,000 per person, the $5 million amount in controversy would be met if there were only 500 Avandia claimants nationwide who experienced heart attacks, strokes, or other complications and who were covered by UHG or any of the putative class members.  Given that UHG intends to bring a putative class action involving at least 100 other health plans, each of which has hundreds, if not thousands of members, the number of Avandia claimants to whom UHG is asserting that it is subrogated will be much higher.

22.     In addition, there are over 800 claimants who have filed suit in the Paxil Pregnancy litigation. These claimants' suits are for various prenatal heart defects, ranging from mild to severe. Treatment of birth defects can cost hundreds of thousands of dollars over a lifetime. For example, a study by the American Heart Association relying on statistics from 2003 found that the average cost of hospitalization *alone* for treatment of hypoplastic left heart was $199,587, and for treatment of transposition of the great arteries ("TGA") was above $150,000. (*See* Am. Heart Ass'n, *Heart Disease and Stroke Statistics: 2010 Update At-A-Glance*, at 19). In other words, even assuming that hospitalization costs had not risen in the last eight years, only 35 claimants alleging defects like hypoplastic left heart or TGA would place UHG's purported class claims and the amount in controversy well over $5 million.

23.     As demonstrated above, UHG's Avandia and Paxil-related claims on behalf of the class will therefore involve an amount above $5 million.

24.     Accordingly, CAFA's amount in controversy requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2) and (d)(6).

25.     Because CAFA confers federal subject matter jurisdiction over this action, removal of this action to this Court is proper pursuant to 28 U.S.C. §§ 1441 and 1453.

## III.     THIS COURT HAS FEDERAL JURISDICTION UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

26.   This Court has exclusive federal jurisdiction over UHG's ERISA claim. 29 U.S.C. § 1132(e)(1).

27.   Because ERISA confers exclusive federal jurisdiction over UHG's recovery claim, removal of this action is proper pursuant to 28 U.S.C. §§ 1441 and 1331.

WHEREFORE, for the reasons set forth above, GSK requests that this Court assume full jurisdiction over this action as provided by law.

Nina M. Gussack (Pa. Bar No. 31054)
Anthony C.H. Vale (Pa. Bar No. 28139)
Kenneth H. Zucker (Pa. Bar No. 38418)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
*Attorneys for Defendant*

Dated:  June 15, 2011

## CERTIFICATE OF SERVICE

I hereby certify that, on June 15, 2011, I served a true and correct copy of the foregoing Notice of Removal upon the following via electronic means and will also be placing a copy in the U.S. Mail, First Class postage prepaid:

> Richard W. Cohen, Esq.
> Gerald Lawrence, Esq.
> Peter D. St. Phillip, Esq.
> LOWEY DANNENBERG COHEN & HART, P.C.
> Four Tower Bridge
> 200 Barr Harbor Drive, Suite 400
> West Conshohocken, PA 19428

> *Attorneys for Plaintiff*

Kenneth H. Zucker

# Exhibit A

Court of Common Pleas of Philadelphia County
Trial Division

## Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**DECEMBER 2010**    **002871**

E-Filing Number: 1012038381

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| UNITEDHEALTH GROUP, INC. | GLAXOSMITHKLINE, L.L.C |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 9900 BREN RD.<br>MINNEAPOLIS MN 55440-1459 | ONE FRANKLIN PLAZA<br>PHILADELPHIA PA 19101 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC., |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | ONE FRANKLIN PLAZA<br>PHILADELPHIA PA 19101 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☐ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☒ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☒ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W-D/Survival |

CASE TYPE AND CODE

KT - DISPUTE RE: BUSINESS TORT

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED**
**PRO PROTHY**

**DEC 23 2010**

**M. TIERNEY**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES        NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: UNITEDHEALTH GROUP, INC.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| GERALD LAWRENCE, JR. | 200 BARR HARBOR DR<br>SUITE 400 |

| PHONE NUMBER | FAX NUMBER | WEST CONSHOHOCKEN PA 19428 |
|---|---|---|
| (610)941-2760 | (610)862-9777 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 69079 | glawrence@lowey.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| GERALD LAWRENCE, JR. | Thursday, December 23, 2010, 03:34 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

**X** 2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

    (1)   Uniform Commercial Code transactions;

    (2)   Purchases or sales of business or the assets of businesses;

**X**    (3)   Sales of goods or services by or to business enterprises;

    (4)   Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

    (5)   Surety bonds;

    (6)   Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

    (7)   Franchisor/franchisee relationships.

3. Actions relating to trade secret or non-compete agreements;

4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

5. Actions relating to intellectual property disputes;

6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

7. Derivative actions and class actions based on claims otherwise falling within these ten types, and consumer class actions other than personal injury and products liability claims;

8. Actions relating to corporate trust affairs;

9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

By: **GERALD LAWRENCE, Esq.**
email: glawrence@lowey.com
Identification No. 69079
**LOWEY DANNENBERG COHEN & HART, P.C.**
**Four Tower Bridge**
**200 Barr Harbor Drive, Suite 400**
**West Conshohocken, PA 19428**
**Phone: 610-941-2760**

**Assessment of Damages Hearing**

| | IS  |X| IS NOT REQUIRED

| | JURY |X| NON JURY
for Subrogation and Declaratory Relief

**Attorneys for Plaintiff**

| | | |
|---|---|---|
| **UNITEDHEALTH GROUP, INC.** | ) | |
| 9900 Bren Rd. | ) | |
| **Minneapolis, MN 55440-1459** | ) | |
| individually and on behalf of | ) | **PHILADELPHIA COUNTY** |
| similarly situated health plans, | ) | **COURT OF COMMON PLEAS** |
| | ) | **Trial Division** |
| Plaintiffs, | ) | |
| | ) | **DECEMBER TERM, 2010** |
| v. | ) | |
| | ) | **NO.** |
| **GLAXOSMITHKLINE, L.L.C.,** and | ) | |
| **GLAXOSMITHKLINE HOLDINGS** | ) | |
| **(AMERICAS) INC.,** | ) | |
| **One Franklin Plaza** | ) | |
| **Philadelphia, PA 19101** | ) | |
| Defendants. | ) | |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

    Kindly issue a Writ of Summons in the above-captioned matter, upon payment of your

costs only.

                By: ___/s/ Gerald Lawrence_____
                Richard W. Cohen, Esq. (I.D. No. 55485)
                Gerald Lawrence, Esq. (I.D. No. 69079)
                Peter D. St. Phillip, Esq. (I.D. No. 70027)
                LOWEY DANNENBERG COHEN & HART, P.C.
                Four Tower Bridge
                200 Barr Harbor Drive, Suite 400
                West Conshohocken, PA 19428
                Phone: 610-941-2760
                Fax: 610-862-9777
                Email: glawrence@lowey.com

1

*Of Counsel:*
RAWLINGS AND ASSOCIATES
Mark D. Fischer, Esq.
Jeffrey C. Swann, Esq.
Robert C. Griffith, Esq.
1 Eden Parkway
LaGrange, Kentucky  40031
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

*Attorneys for Plaintiff, UnitedHealth Group, Inc.*

2

By:   **GERALD LAWRENCE, Esq.**
      email: glawrence@lowey.com
      Identification No. 69079
**LOWEY DANNENBERG COHEN & HART, P.C.**
**Four Tower Bridge**
**200 Barr Harbor Drive, Suite 400**
**West Conshohocken, PA 19428**
Phone: 610-941-2760

                                       **Attorneys for Plaintiff**

| | |
|---|---|
| **UNITEDHEALTH GROUP, INC,** <br>     individually and on behalf of <br>     all others similarly situated, <br><br>                   Plaintiffs, <br><br>       v. <br><br> **GLAXOSMITHKLINE, L.L.C.,** <br> **GLAXOSMITHKLINE HOLDINGS** <br> **(AMERICAS) INC.,** JOHN DOE <br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

                                  **PHILADELPHIA COUNTY**
                                  **COURT OF COMMON PLEAS**
                                  **Trial Division**

                                  **DECEMBER TERM, 2010**

                                  **NO.**

## PRE-COMPLAINT INTERROGATORIES

       Pursuant to Rule 4003.8 of the Pennsylvania Rules of Civil Procedure, Plaintiff

UnitedHealth Group, Inc. ("United"), on behalf of itself and similarly situated health plans,

serves these Pre-Complaint Interrogatories on Defendants GlaxoSmithKline, L.L.C. and

GlaxoSmithKline Holdings (Americas) Inc. (collectively, "GSK"). The Pennsylvania Rules of

Civil Procedure allow for pre-complaint discovery "where the information sought is material and

necessary to the filing of the complaint and the discovery will not cause unreasonable

annoyance, embarrassment, oppression, burden or expense to any person or party." Pa. R. Civ.

P. 4003.8(a). Available discovery under Rule 4003.8 includes, but is not limited to, the

Interrogatories served herein. *See* Pa. R. Civ. P. 4001(c), 4005(a).

### UNITED'S CLAIMS

1

Case ID: 101202874

United, like most health insurers and health benefit plan administrators in the United States, provides medical expense coverage to its members under agreements where such members authorize United to pursue claims for subrogation and reimbursement.  The right to subrogation, which arises when a tortfeasor causes a plan member to suffer injury requiring medical treatment that was paid for by the plan, allows the plan to stand in the shoes of the member to bring a claim directly against the tortfeasor for the cost of that medical treatment.  In addition to this contractual right, many states, including Pennsylvania, recognize an equitable right to subrogation even in the absence of plan language extending that right to a health plan. *See, e.g., Valor v. Pa. Emps. Benefit Trust Fund*, 939 A.2d 312, 319-320 (Pa. 2007).  The right to reimbursement, which arises when a member is injured by a tortfeasor and subsequently receives compensation from the tortfeasor for his or her injury, allows the plan to recover its medical expenses directly from the member or others who come into possession of the settlement funds, such as the member's attorney.

GSK is currently defending over 13,000 personal injury and products liability claims brought by current and former users of Avandia, Avandaryl, and Avandamet (collectively, "Avandia").  Avandia is a prescription drug used for the treatment of type-2 diabetes mellitus. Avandia side effects have included a range of adverse health outcomes, including congestive heart failure, strokes, and heart attacks.  People who claim to have been injured by Avandia ("Avandia Claimants") include plaintiffs in federal and state courts (including this Court), and others who have signed tolling agreements with GSK.  In July 2010, it was widely reported that GSK had settled an unknown number of Avandia-related claims for at least $460 million.  United and other similarly situated health plans have no access to the identities of these settling Avandia Claimants.

Case ID: 101202871

GSK is also a named defendant in at least 800 personal injury and products liability suits brought by former users of Paxil, an antidepressant prescription drug and has entered into tolling agreements with an unknown number of people who claim they have been injured by Paxil ("Paxil Claimants"). Paxil side effects have included birth defects in newborns of mothers who were treated with the drug during their first trimester. According to press reports, GSK settled the majority of these cases this year. United and other similarly situated health plans have no access to the identities of these settling Paxil Claimants.

United, on behalf of itself and similarly situated health plans, intends to sue GSK and other defendants, seeking (a) a declaratory judgment regarding the status of health plans' subrogation and reimbursement rights; (b) recovery from GSK in subrogation of their expenses of treating the adverse health outcomes their members experienced associated with Avandia; and (c) reimbursement from their health plan members who were Avandia Claimants or Paxil Claimants and settled their Avandia or Paxil claims. However, it is impossible for United to draft its complaint without knowing the identity of the Avandia Claimants and the Paxil Claimants who have (a) sued GSK; (b) signed tolling agreements with GSK; or (c) settled with GSK. Accordingly, with these two Interrogatories, United seeks to identify these Avandia Claimants and Paxil Claimants, as well as their respective attorneys.

## INSTRUCTIONS

The two interrogatories request identification of Paxil Claimants and Avandia Claimants. Please provide answers to these interrogatories in Excel spreadsheets or other searchable electronic format.

## DEFINITIONS

"Avandia" includes the drugs Avandia, Avandamet, and Avandaryl.

Case ID: 101202871

"Avandia Claimant" includes anyone who has (a) sued GSK in state or federal court alleging that Avandia injured him or her or anyone else whom the plaintiff claims the right to represent with respect to the assertion of Avandia-related injury claim; (b) entered into an agreement with GSK that either tolled or resolved his or her (or the person's he or she claims the right to represent) Avandia-related claims against GSK.

"GSK" includes GlaxoSmithKline, L.L.C., GlaxoSmithKline Holdings (Americas) Inc., and any of their affiliates and subsidiaries.

"Paxil Claimant" includes anyone who has (a) sued GSK in state or federal court alleging that Paxil injured him or her or anyone else whom the plaintiff claims the right to represent with respect to the assertion of any Paxil-related injury claim; (b) entered into an agreement with GSK that either tolled or resolved his or her (or the person's he or she claims the right to represent) Paxil-related claims against GSK.

### INTERROGATORIES

1.    Identify (a) the first name, last name, last known address, social security number and date of birth of all Avandia Claimants and any persons such Avandia Claimants purport to represent, as well as the name of any and all health plans that covered each Avandia Claimant and any persons such Avandia Claimants purport to represent and all member identification numbers assigned by each health plan for each Avandia Claimant and any persons such Avandia Claimants purport to represent; and (b) the first name, last name, firm name, and last known address of these Avandia Claimants' respective legal counsel.

2.    Identify (a) the first name, last name, last known address, social security number and date of birth of all Paxil Claimants and any persons such Paxil Claimants purport to represent, as well as the name of any and all health plans that covered each Paxil Claimant and

4

any persons such Paxil Claimants purport to represent and all member identification numbers

assigned by each health plan for each Paxil Claimant and any persons such Paxil Claimants

purport to represent; and (b) the first name, last name, firm name, and last known address of

these Paxil Claimants' respective legal counsel.

**DATE:** December 23, 2010

                  By: ___/s/ Gerald Lawrence_____
                  Richard W. Cohen, Esq. (I.D. No. 55485)
                  Gerald Lawrence, Esq. (I.D. No. 69079)
                  Peter D. St. Phillip, Esq. (I.D. No. 70027)
                  LOWEY DANNENBERG COHEN & HART, P.C.
                  Four Tower Bridge
                  200 Barr Harbor Drive, Suite 400
                  West Conshohocken, PA 19428
                  Phone: 610-941-2760
                  Fax: 610-862-9777
                  Email: glawrence@lowey.com

*Of Counsel:*
RAWLINGS AND ASSOCIATES
Mark D. Fischer, Esq.
Jeffrey Swann, Esq.
Robert C. Griffith, Esq.
1 Eden Parkway
LaGrange, Kentucky 40031
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

**_Attorneys for Plaintiff, UnitedHealth Group, Inc._**

5

Case ID: 101202874

**Exhibit B**

**1**

```
 1
 2              IN THE COURT OF COMMON PLEAS
                    OF PHILADELPHIA COUNTY
 3         FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
                     CIVIL TRIAL DIVISION
 4
 5      _____
        |                            |
 6      | UNITED HEALTH GROUP,       | DECEMBER TERM, 2010
        | INC.                       |
 7      |                            |
        |        Vs.                 |
 8      | GLAXOSMITHKLINE LLC and    | NO. 2871
        | GLAXOSMITHKLINE            |
 9      | Holdings (Americas)        |
        | Inc.                       |
10      |_____|

11               -     -     -

12              May 16, 2011

13               -     -     -

14           City Hall, Courtroom  246
               Philadelphia, Pennsylvania
15               -     -     -

16          Motion to Compel Discovery
                 -     -     -
17

18      B E F O R E :

19      THE HONORABLE MARK I. BERNSTEIN

20

21

22          Maureen McCarthy, RMR, CRCR
                 Official Court Reporter
23                   215-683-8107
            Maureen.mccarthy@courts.phila.gov
24

25
```

**2**

```
 1
 2      A P P E A R A N C E S :

 3      LOWEY, DANNEBERG, COHEN & HART, PC
        BY:  GERALD LAWRENCE, ESQ.
 4      Four Tower Bridge
        200 Barr Harbor Drive, Suite 400
 5      West Conshohocken, PA 19428-2977
        610-941-2760
 6      glawrence@lower.com

 7      PEPPER, HAMILTON LLP
        BY:  ANTHONY VALE, ESQ.
 8      BY:  KENNETH H. ZUCKER, ESQ.
        3000 Two Logan Square
 9      18th and Arch Streets
        Philadelphia, PA 19103-2799
10      215-981-4000
        valea@pepperlaw.com
11      zuckerk@pepperlaw.com

12

13

14
15
16
17
18
19
20
21
22
23
24
25
```

**3**

United vs. GlaxoSmithKline - 5/16/2011

```
 1
 2          THE COURT:  Who's here for United
 3      Health Group?
 4          MR. LAWRENCE:  Good morning, Your
 5      Honor.  Gerald Lawrence for United Health
 6      Care.
 7          MR. VALE:  Anthony Vale from Pepper,
 8      Hamilton and my colleague, Ken Zucker, is
 9      with me.  David (?) from King and
10      Spalding and James Barger, Aylstock,
11      Witkin.  He represents the plaintiff,
12      steering committee in the Avandia
13      litigation; so if Your Honor has any
14      questions on the plaintiff's position on
15      it, they're here.
16          THE COURT:  Fine.  I have a note
17      here and I don't know what it means.  See
18      if settled.  Then it says not settled.
19          MR. LAWRENCE:  I don't believe it's
20      our note.
21          MR. VALE:  There's no current
22      negotiations.
23          THE COURT:  I don't know who wrote
24      that.  Mr. Lawrence?
25          MR. LAWRENCE:  This is a Motion to
```

**4**

United vs. GlaxoSmithKline - 5/16/2011

```
 1
 2      Compel discovery.  I'd like to review the
 3      standards for precomplaint discovery,
 4      explain why we need them.  We discussed
 5      this at some length with the defendant so
 6      I'd like to anticipate their arguments.
 7          By way of background, we filed this
 8      matter as a writ in that December.  We
 9      promptly served in December a
10      precomplaint discovery.
11          The basis for this is that my
12      client, United Health Care, is a large
13      health insurance company.  The defendants
14      here --
15          THE COURT:  Is this a class action?
16          MR. LAWRENCE:  It is.  The
17      defendants, GlaxoSmithKline, among other
18      things, manufacture two drugs, Avandia
19      and Paxil.  Both are alleged to be
20      defective and are the subject of a mass
21      tort litigation.
22          We believe, Your Honor, that our
23      insureds and other persons for whom we
24      pay health care expenses, many of them
25      are claimants in these cases and that we
```

**5**

*United vs. GlaxoSmithKline - 5/16/2011*

2 have a right to recovery of the monies
3 which we have paid for their health care
4 as a result of the alleged negligence of
5 the defendants.
6     The statutory and case law authority
7 for precomplaint discovery is McNeil
8 versus Jordan. What that case says is
9 that we are required to demonstrate good
10 faith as well as probable cause that the
11 information sought is material and
12 necessary to the filing of the complaint.
13     In these circumstances, Your Honor,
14 United Health Care and other payers would
15 have potentially four different causes of
16 action to recover for the monies which
17 they spent for the health care of the
18 persons that were harmed by Avandia; the
19 first of which is plaintiff subrogation.
20     Subrogation, simply put, is the
21 payer, the insurer, standing in the shoes
22 of the victim to recover money that the
23 insurer paid for the health care at
24 issue.
25     There's contractual subrogation; but

**6**

*United vs. GlaxoSmithKline - 5/16/2011*

2 also in Pennsylvania, statutory
3 subrogation that was established by the
4 Supreme Court in 2007 or 2008 in the PBTF
5 case, it was Vadoya versus the PBT.
6     What that case says is that even if
7 there is not a specific contractual
8 right for health plans to seek payment
9 from third sources for its expenses, as
10 an equitable matter in Pennsylvania,
11 under Pennsylvania law, if you've made
12 these expenditures, you have a right to
13 recover from the tort-feasor.
14     In addition to the subrogation
15 claim, Your Honor, we would have a
16 reimbursement claim. Reimbursement is a
17 similar type claim, although the right of
18 recovery would be to be reimbursed by the
19 insured who's made a recovery from GSK.
20 We also have rights -- I see a puzzled
21 look on Your Honor's face.
22     We also, we have a right of recovery
23 under the ERISA statute which, in its
24 simplest form to explain that right,
25 there's a United States Supreme Court

**7**

*United vs. GlaxoSmithKline - 5/16/2011*

2 case called Sereboff a few years ago.
3 What Sereboff says is that where you have
4 an ERISA plan who has expended money to
5 cover health care costs on behalf of one
6 of its members, and the member recovers
7 from a third-party and there's a fund of
8 assets available to pay claims to the
9 member, that you have a right under ERISA
10 to make that recovery. ERISA has an
11 effective subrogation claim.
12     You could say that it doesn't use
13 the word "subrogation" but that's the
14 effect of it.
15     THE COURT: That's a way of thinking
16 about --
17     MR. LAWRENCE: Absolutely. That
18 would be consistent with the holding of
19 same.
20     And the fourth way we think we have
21 a right to recover is to the extent that
22 some of the plans which our client has
23 here are Medicare Plus choice plans which
24 is where a person who's Medicare eligible
25 enrolls in a private plan from United,

**8**

*United vs. GlaxoSmithKline - 5/16/2011*

2 and the Government pays the premium for
3 that plan or the majority of the premium
4 for the plan.
5     Sometimes individuals pay additional
6 premiums to get a different level of
7 service, but the Government pays
8 essentially for them to be in a private
9 plan rather than Medicare.
10     Under the Medicare statutes, there's
11 a right to charge, which is a tort feasor
12 or another person who would be liable for
13 payments to make the recovery.
14     We have actually filed for another
15 client, for Humana, a case down the
16 street at the Federal courthouse,
17 attempting to recover under the Medicare
18 Secondary Payor Act for those claims
19 which we have paid with respect to
20 Avandia claimants; and we interestingly
21 had a motion to dismiss argument on that
22 case about a week ago, ten days ago; and
23 Mr. Semitis, who's not here but is Mr.
24 Vale's partner and Mr. Zucker, was there
25 during this argument, was asked by the

**9**

*United vs. GlaxoSmithKline - 5/16/2011*

2 Court, after he acknowledged that there
3 is a right under the Medicare Act to
4 recover, but that the dispute was whether
5 there's a Federal claim, it should be
6 pursued in Federal Court.
7 The judge, Laughlin, I think,
8 rightfully --
9 THE COURT: It's a Federal statute?
10 It can't be enforced in Federal Court?
11 MR. LAWRENCE: That was the point
12 she's taken; and in fairness, there is
13 some disparity of interpretation of the
14 case law on that; and whether the right
15 to recover is limited only to the Federal
16 government for the standard Medicare Act
17 or whether a client, such as my client,
18 who have these advantage plans will be
19 able to recover.
20 But in response to the judge's
21 question, do they have any recourse in
22 any event to make these chargebacks?
23 Because it's clear under the statute and
24 they concede under the statute there's a
25 right for chargeback. Mr. Semitis said,

**10**

*United vs. GlaxoSmithKline - 5/16/2011*

2 yes, they have recourse, Your Honor.
3 We're not here to define the scope of the
4 rights that supported them under the
5 Medicare Advantage Act.
6 There was something there. They are
7 allowed to charge. How far that goes and
8 what that means is for another day; but
9 that right, like any Federal right that
10 is created without a specific Federal
11 remedy can be enforced under state law.
12 The Court followed up. Was this a
13 matter of contract? Mr. Semitis from
14 Pepper said: As a matter of contract or
15 state law with respect to subrogation
16 rights. I mean, there's a lot of common
17 law that, indeed, there was some right
18 afforded a right to charge. We want to
19 see how that plays out and, actually,
20 brought an appropriate forum.
21 I think that all but concedes that
22 we have state law right of action at a
23 minimum for those Medicare claims. I
24 think we have a state law right of action
25 for the other reasons that I've said for

**11**

*United vs. GlaxoSmithKline - 5/16/2011*

2 subrogation, both contractual subrogation
3 and the Commonwealth right of equitable
4 subrogation that we're afforded in
5 Pennsylvania.
6 And at an absolute minimum, we've
7 made a showing as required in McNeil
8 versus Jordan that there's probable cause
9 to bring these claims. Under McNeil
10 versus Jordan, we then also have to show
11 the reasonableness, if you will, in
12 discovery that we're seeking.
13 And I think what we're seeking is
14 very narrow. We're asking for the
15 identity of the persons who have either
16 sued the defendants, the persons who have
17 entered into tolling agreements to the
18 statutes; they don't have to bring a
19 claim and, third, the identities of those
20 who actually settled claims with the
21 defendants.
22 The reason that we need that is that
23 in order to bring these subrogation
24 claims or the other claims that we
25 discussed, we have to identify on whose

**12**

*United vs. GlaxoSmithKline - 5/16/2011*

2 behalf we're pursuing the claim.
3 Now, we know with respect to a small
4 number of claimants that we were able to
5 identify United States Health Care
6 members who we believe may have filed
7 lawsuits. We can't identify them with
8 certainty because there could be more
9 than one Mark Bernstein in the City of
10 Philadelphia who filed a lawsuit; so we
11 think there's some, but we don't know,
12 and that's really why we need discovery
13 so that we can pursue claims against them
14 to recover these funds.
15 Now, they've raised a number of
16 defenses and objections, as you might
17 think, although I will note, they never
18 responded to the discovery. We served
19 this discovery in December. They removed
20 the case from the 29th day, the day
21 before the discovery response was due at
22 Federal Court on the writ. You look
23 somewhat shocked.
24 THE COURT: There's no requirement
25 to respond to discovery precomplaint.

**45**

*United vs. GlaxoSmithKline - 5/16/2011*

 2   I'll call you back as soon as I can.
 3              - - -
 4              (Recess.)
 5              - - -
 6         THE COURT:  Mr. Lawrence, I'm not
 7   following this.  Your client is United
 8   Health Group?
 9         MR. LAWRENCE:  That's correct.
10         THE COURT:  And your class is United
11   Health Group and similarly situated
12   Health Plans; right?
13         MR. LAWRENCE:  That's correct.
14         THE COURT:  Why do you need the
15   names of any insured?  I don't mean
16   insured, any settler.
17         MR. LAWRENCE:  In order to comply
18   with the pleading requirements for the
19   subrogation cases, we need to establish
20   the identity of the person who is our
21   insured who has been a victim of their
22   conduct.
23         THE COURT:  How did you do that in
24   Federal court for Humana?
25         MR. LAWRENCE:  That was one of the

**46**

*United vs. GlaxoSmithKline - 5/16/2011*

 2   deficiencies they were attempting to
 3   underline with our complaint.
 4         What we were able to do with Humana
 5   is similar to what we were able to do
 6   with United Health, was to identify by
 7   doing some docket matchings persons with
 8   particular names; and based upon the
 9   identifying information we had that we
10   suspect were persons who had asserted
11   claims in the Humana case, we sent them a
12   list of names, and they refused to
13   confirm or deny whether those
14   persons actually had claims.
15         THE COURT:  Is there a specific
16   class action leading rule that you're
17   referring to?
18         MR. LAWRENCE:  It's not a class
19   action, but it would be the requirements
20   in order plead a claim for subrogation,
21   we would have to identify the person who
22   we claim was injured by their conduct.
23         THE COURT:  Fine.  Mr. Vale, do you
24   think they have to plead a person's name
25   in order to correct -- to adequately

**47**

*United vs. GlaxoSmithKline - 5/16/2011*

 2   plead an otherwise valid subrogation
 3   claim?
 4         MR. VALE:  Yes, Your Honor.  Maybe I
 5   can distinguish two situations; one where
 6   they might have.
 7         THE COURT:  On what basis can I
 8   possibly reject their Interrogatory to
 9   get some names, however narrow, if you
10   think they need that to properly file a
11   claim?
12         MR. VALE:  Well, Your Honor, with
13   respect to people who have asserted a
14   claim against GSK and with whom we have
15   settled, Your Honor, they have no
16   subrogation right because the claims
17   already been --
18         THE COURT:  Your hypothetical is
19   different from mine, and if you continue
20   doing that, I will assume that the reason
21   you're doing that is because there is no
22   answer to the question that I'm asking.
23         If you're saying, as you just said,
24   that in order to properly plead a
25   subrogation claim of any sort, otherwise

**48**

*United vs. GlaxoSmithKline - 5/16/2011*

 2   valid, they need names of people, how can
 3   I reject their precomplaint discovery
 4   asking for the names of people in the
 5   category?
 6         MR. VALE:  Because, Your Honor, the
 7   precomplaint -- they are not entitled to
 8   precomplaint discovery in order to obtain
 9   this information.
10         THE COURT:  They are entitled to
11   precomplaint discovery in order to get
12   the information they need to file a
13   proper complaint, and you are conceding
14   that they need names in order to file a
15   proper complaint.
16         So your entire point is there is no
17   cognizable claim.  Am I correct or
18   incorrect?  I'm hearing you concede that
19   they need names in order to file a
20   complaint, and I guess I'm ignoring that
21   they can get the names from their own
22   database?
23         MR. VALE:  Mr. Lawrence has outlined
24   what he believes are four possible
25   courses of action.

61

*United vs. GlaxoSmithKline - 5/16/2011*

2  billing codes that are indicative that
3  they're in an accident.
4      We have a right to get the medical
5  records. We're then able to get those
6  medical records and determine they went
7  to the hospital and said they were in the
8  car crash and so on and so forth.
9      Here, the vast majority of the names
10  we seek are people who haven't filed a
11  complaint; so we can't even identify who
12  they are other than to send a letter to
13  all the millions of people that are in
14  our system.
15      With respect to the 50 to 75 that I
16  talked about earlier, in the event that
17  we can reach out and contact them, we can
18  do that and they could choose to comply
19  with us or not to comply with us.
20      But oftentimes, these claims are for
21  activities that took place many, many
22  years before. The persons are no longer
23  in our plans in many instances. We no
24  longer have their current addresses and
25  we are frustrated in our ability to do

62

*United vs. GlaxoSmithKline - 5/16/2011*

2  that.
3      The other thing, somebody can take
4  Avandia while they're in our plan. Let's
5  just make it year 2004. They leave our
6  plan and go on to another plan. By the
7  time they have a cardiac event, they're
8  in somebody else's plan. So for them, we
9  wouldn't have a right of subrogation.
10      But then it works the other way.
11  Somebody who's in our plan in 2007 has a
12  heart attack.
13      THE COURT: Wait a minute. You say
14  individually and on behalf of similarly
15  situated health plans?
16      MR. LAWRENCE: That's correct.
17      THE COURT: You're asking eventually
18  for me or some Federal judge to certify a
19  class of health insurers?
20      MR. LAWRENCE: Eventually, we hope
21  to be able to get to that point. It's a
22  cart before the horse argument.
23      They admit that if they had the
24  names, we can make those claims. They
25  have the names and refuse to give us the

63

*United vs. GlaxoSmithKline - 5/16/2011*

2  names.
3      THE COURT: No. I forced them to
4  admit that, but I posited everything else
5  is good and they don't think anything
6  else is good; right?
7      MR. VALE: I don't want to
8  interrupt, but I do want to address the
9  subrogation point.
10      THE COURT: They're not admitting
11  that. They haven't conceded anything.
12      MR. LAWRENCE: If you read the
13  McNeil versus Jordan case, Your Honor,
14  we're not here on preliminary objections.
15  That's the standard they want to impose
16  on us.
17      They want us to have to win
18  preliminary objections that we have a
19  claim that they won't give us the
20  information to file in order to move
21  forward.
22      THE COURT: Let's look at your
23  Interrogatories. Can we?
24      MR. LAWRENCE: Yes, Your Honor.
25  They're attached to our moving papers, I

64

*United vs. GlaxoSmithKline - 5/16/2011*

2  believe, as Exhibit 1. They're Exhibit
3  A, Your Honor.
4      Your Honor, we explain the claims we
5  want to set forth, which is required in
6  the statute. We actually get to the
7  Interrogatories on page four. There's
8  just two Interrogatories. We ask for
9  first name, last name, last known
10  address.
11      THE COURT: Let me read it.
12      You're asking for the attorneys'
13  information as well; right?
14      MR. VALE: Both, Your Honor, that's
15  correct.
16      THE COURT: And the attorneys'
17  information, to a large extent, can be
18  gotten through a search of the dockets of
19  mass tort and through Judge Ruth's
20  dockets, whatever they are, and are not
21  needed for your complaint. Are they?
22      MR. LAWRENCE: That's correct, not
23  needed for the complaint.
24      THE COURT: The objections to that
25  part of your Interrogatories are